```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------X
WILLIE JORDAN,                      :
                  Plaintiff,        :   08 Civ. 2191 (HBP)
     -against-                      :   OPINION
                                        AND ORDER
DAVID CHALUISAN PAPER               :
FIBERS CORP.,
                                    :
                  Defendant.
                                    :
-----------------------------------X
```

PITMAN, United States Magistrate Judge:

I. Introduction

This is an employment discrimination action in which plaintiff alleges that he was demoted and then terminated by virtue of his age and race and subjected to unequal terms of employment.  By notice of motion dated January 30, 2009 (Docket Item 13) defendant moves for summary judgment dismissing the complaint.  For the reasons set forth below, defendant's motion is granted in all respects, and the complaint is dismissed.[1]

---

[1] The parties have consented to my exercising plenary jurisdiction in this matter pursuant to 28 U.S.C. § 636(c).

II. <u>Facts</u>[2]

      Chaluisan Paper Fibers Corp. ("CPF") is a weigh station engaged in the business of sorting unrecylable matter from paper and cardboard (Affidavit of David Chaluisan, sworn to January 23, 2009 ("Chaluisan Aff."), ¶ 1, annexed as exhibit C to the Declaration of Cindy S. Minniti, dated January 23, 2009 ("Minniti Decl.")). CPF hired plaintiff in March 2000 as a Machine Operator/Forklift Driver (Chaluisan Aff. ¶ 3). Plaintiff, who is an African-American male, was 67 years of age at the time he was hired (Chaluisan Aff. ¶ 3).

      Plaintiff initially worked as a Machine Operator/Forklift Driver during the night shift, from 11:00 p.m. to 7:00 a.m. (Transcript of Plaintiff's Deposition, taken on November 13, 2008 ("Plaintiff's Dep.") at 69, annexed as B to the Minniti Decl.; (Chaluisan Aff. ¶ 4). Plaintiff repeatedly damaged CPF's property while operating the forklift (Chaluisan

---

[2]Although plaintiff, who is proceeding <u>pro se</u>, received the notice that is required by Local Civil Rule 56.1 with defendant's motion, he did not submit any substantive response to the motion. Accordingly, I issued an Order on August 20, 2009 advising him of the nature of defendant's motion, the nature of the material that needed to be submitted if he was opposing the motion and the potential consequences if he failed to submit evidentiary material opposing the motion. Although plaintiff did make a submission in response to my August 20 Order, it did not address the issues raised in defendant's motion nor did it controvert the version of the facts set forth in defendant's motion. Accordingly, the facts set forth herein are based entirely on defendant's uncontroverted submissions.

Aff. ¶ 5).  As a result, CPF reassigned plaintiff in 2003 to work as a Laborer (Picker/Sorter) (Chaluisan Aff. ¶¶ 5-6).  At the time plaintiff was reassigned, he was being supervised by Willie Graves, who is also an African American male and is older than plaintiff (Chaluisan Aff. ¶ 4).  Although the rate of pay for a Laborer (Picker/Sorter) was less than the rate earned by a Machine Operator/Forklift Driver, CPF continued to pay plaintiff the higher hourly rate he earned in the latter position (Chaluisan Aff. ¶ 6).  Plaintiff never objected to being reassigned to work as a Laborer (Sorter/Picker) (Chaluisan Aff. ¶ 7).

      Plaintiff had additional problems at work in November 2005.  He was stooped over and was unable to perform the essential functions of his job (Chaluisan Aff. ¶ 10).  Rather than terminate plaintiff's employment, CPF transferred plaintiff from the night shift to the day shift (Chaluisan Aff. ¶¶ 8, 10).  No union grievance was filed objecting to this transfer (Chaluisan Aff. ¶ 9).  Even after the transfer, however, plaintiff was unable to perform the essential functions of a Laborer (Picker/Sorter); he was unable to bend and to lift which were essential to his job of separating unrecyclable material from recyclable material (Chaluisan Aff. ¶ 10).  Nevertheless, CPF did not terminate plaintiff's employment, and instead attempted to find a way in which plaintiff could do his job (Chaluisan Aff. ¶ 11).

CPF advised plaintiff to see a physician concerning his limited range of motion (Chaluisan Aff. ¶ 12). Plaintiff did consult with a physician who could find no medical reason for plaintiff's problems and cleared him for work (Chaluisan Aff. ¶ 13). Plaintiff's supervisor at CPF met with him in January 2006 and explained to plaintiff that he should find some other type of work (Chaluisan Aff. ¶ 14). In response, plaintiff begged not to be terminated and spontaneously offered to retire if CPF permitted him to work for one more year (Chaluisan Aff. ¶¶ 14-15). PFC accepted plaintiff's offer (Chaluisan Aff. ¶ 16).

Although plaintiff's work throughout 2006 was poor, he was not disciplined because CPF relied on his promise that he would retire after one more year of employment (Chaluisan Aff. ¶ 17). In February 2007, however, plaintiff refused to retire although he admitted to CPF that he had previously agreed to do so and was hardly working at all by that time (Chaluisan Aff. ¶¶ 18-21). Defendant terminated plaintiff's employment, effective February 28, 2007 (Chaluisan Aff. ¶ 19).

Plaintiff's union filed a grievance on his behalf, alleging that plaintiff's termination constituted a violation of the collective bargaining agreement, and an arbitration hearing was held on November 27, 2007 at the union's office in Manhattan (Opinion and Award of Arbitrator William J. DiCindio, dated December 27, 2007 ("Arb. Dec'n"), at 1-2, annexed as Exhibit A to

the Minniti Decl).  Plaintiff was represented by counsel at the arbitration hearing (Arb. Dec'n at 1).  Although plaintiff testified and denied entering into the agreement to retire, the arbitrator found his testimony in this regard to be incredible (Arb. Dec'n at 8, 11-12).  The arbitrator concluded that there was no evidence to support plaintiff's claim of discrimination and that there was just cause for plaintiff's termination (Arb. Dec'n at 13, 17-18).

The arbitrator's conclusions that plaintiff was not the victim of age or racial discrimination are corroborated by the following testimony that plaintiff gave at his deposition in this matter:

> Q.  Why did you feel there were unequal terms and conditions of your employment?  Aside from being terminated, were there any other complaints against the company?
>
> A.  No.
>
> Q.  You have no examples of other instances other than the termination where you felt that you were treated differently?
>
> A.  No, I don't feel that.
>
> Q.  Anything else?  There were no other instances?
>
> A.  No.
>
> Q.  Why do you think this happened in regards to the termination?
>
> A.  That's something that I have been trying to figure out for my own self, why did this happen.  That's what I said to you, it's not what was done, it's the way it was done.  And I still say that.  It's not

5

what he had done, it's the way he went about doing it. I feel that it was unnecessary to do it like that and I felt like that was out of the state of the law. I have been saying that all the time. It's not that I want to bring this but the damage is already done. I am out of work. I never wanted nobody to give me nothing. This is not nothing that I am asking for that you are giving me [sic]. I feel like I earned that.

    Q. It's not what was done, it was how it was done?

    A. It was how it was done.

    Q. Do you feel that the action was done because of age?

    A. I don't think it was out of age. I think it's just in a state of mind. . . .

    Q. Do you think the termination was because of your race?

    A. Well, no, I wouldn't say that.

    \*    \*    \*

    Q. Is there any reason to believe your termination was based upon your age?

    A. No.

    Q. Is there any reason to believe your termination was based upon your race?

    A. I will say yes and I will say no.

    Q. Why do you say that?

    A. Because I hate to say something today or tomorrow that I will resent that because it's hard for me to forgive somebody that they did something just because you could do it [sic]. A lot of times, if you have the power to do it, you do it.

    Q. So yes and no to the fact that you feel this was based on race.

>     Why do you feel it was based upon your race?
>
>     A.  I don't feel like it was race.  Because he got
> three -- he got a guy working in the day shift that is
> a colored guy and he got some working in the night,
> three guys working on my shift.  It was me and two more
> guys.  They was working on my shift.  It was me and two
> more guys.  They was working.  They are still working.

(Plaintiff's Dep. at 48-51, 68-69).


III.  Analysis


   A.  Summary Judgment Standard


   The standards applicable to a motion for summary judgment are well-settled and require only brief review.

>     Summary judgment shall be granted when there is no
>     genuine issue of material fact and the moving party is
>     entitled to judgment as a matter of law.  Fed.R.Civ.P.
>     56(c).  This form of relief is appropriate when, after
>     discovery, the party -- here plaintiff -- against whom
>     summary judgment is sought, has not shown that evidence
>     of an essential element of her case -- one on which she
>     has the burden of proof -- exists.  See Celotex Corp.
>     v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91
>     L.Ed.2d 265 (1986).  This form of remedy is inappropri-
>     ate when the issue to be resolved is both genuine and
>     related to a disputed material fact.  An alleged fac-
>     tual dispute regarding immaterial or minor facts be-
>     tween the parties will not defeat an otherwise properly
>     supported motion for summary judgment.  See Howard v.
>     Gleason Corp., 901 F.2d 1154, 1159 (2d Cir. 1990).
>     Moreover, the existence of a mere scintilla of evidence
>     in support of nonmovant's position is insufficient to
>     defeat the motion; there must be evidence on which a
>     jury could reasonably find for the nonmovant.  Anderson
>     v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S.Ct.
>     2505, 91 L.Ed.2d 202 (1986).
>
>     If the movant demonstrates an absence of a genuine
>     issue of material fact, a limited burden of production
>     shifts to the nonmovant, who must "demonstrate more

> than some metaphysical doubt as to the material facts," and come forward with "specific facts showing that there is a genuine issue for trial." Aslanidis v. United States Lines, Inc., 7 F.3d 1067, 1072 (2d Cir. 1993). If the nonmovant fails to meet this burden, summary judgment will be granted against it. Gallo v. Prudential Residential Servs., 22 F.3d 1219, 1224 (2d Cir. 1994).

Powell v. Nat'l Bd. of Med. Exam'rs, 364 F.3d 79, 84 (2d Cir. 2004); accord Simsbury-Avon Preservation Soc., LLC v. Metacon Gun Club, Inc., 575 F.3d 199, 204 (2d Cir. 2009), citing Celotex Corp. v. Catrett, supra, 477 U.S. at 322-23 ("the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment"); Rubens v. Mason, 527 F.3d 252, 254 (2d Cir. 2008); Jeffreys v. City of New York, 426 F.3d 549, 553-54 (2d Cir. 2005).

"In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant may satisfy [its] burden by pointing to an absence of evidence to support an essential element of the nonmoving party's claim." Vann v. City of New York, 72 F.3d 1040, 1048 (2d Cir. 1995). "A defendant moving for summary judgment must prevail if the plaintiff fails to come forward with enough evidence to create a genuine factual issue to be tried with respect to an element essential to its case." Allen v. Cuomo, 100 F.3d 253, 258 (2d Cir. 1996).

"In determining whether a genuine issue of material fact exists, a court must examine the evidence in the light most favorable to, and draw all inferences in favor of, the non-movant . . . . Stated more succinctly, '[t]he evidence of the non-movant is to be believed.'" Lucente v. Int'l Bus. Machs. Corp., 310 F.3d 243, 253-54 (2d Cir. 2002), quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); accord Jeffreys v. City of New York, supra, 426 F.3d at 553 ("Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment.") (internal quotation marks omitted); see also Make the Road by Walking, Inc. v. Turner, 378 F.3d 133, 142 (2d Cir. 2004); Dallas Aerospace, Inc. v. CIS Air Corp., 352 F.3d 775, 780 (2d Cir. 2003).

"Material facts are those which 'might affect the outcome of the suit under the governing law,' and a dispute is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Coppola v. Bear Stearns & Co., 499 F.3d 144, 148 (2d Cir. 2007), quoting Anderson v. Liberty Lobby, Inc., supra, 477 U.S. at 248; accord McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 202 (2d Cir. 2007). "'[I]n ruling on a motion for summary judgment, a judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the [non-movant] on the evidence presented[.]'"

Cine SK8, Inc. v. Town of Henrietta, 507 F.3d 778, 788 (2d Cir. 2007), quoting Readco, Inc. v. Marine Midland Bank, 81 F.3d 295, 298 (2d Cir. 1996).

Summary judgment is "ordinarily inappropriate" in employment discrimination cases where the employer's intent and state of mind are in dispute. Carlton v. Mystic Transp., Inc., 202 F.3d 129, 134 (2d Cir. 2000); Cifarelli v. Vill. of Babylon, 93 F.3d 47, 54 (2d Cir. 1996); see Gallo v. Prudential Residential Servs., supra, 22 F.3d at 1224; Montana v. First Fed. Sav. & Loan Ass'n, 869 F.2d 100, 103 (2d Cir. 1989); Meiri v. Dacon, 759 F.2d 989, 998 (2d Cir. 1985). Moreover, in discrimination cases

> summary judgment may not be granted simply because the court believes that the plaintiff will be unable to meet his or her burden of persuasion at trial. There must either be a lack of evidence in support of the plaintiff's position, or the evidence must be so overwhelmingly tilted in one direction that any contrary finding would constitute clear error.

Danzer v. Norden Sys., Inc., 151 F.3d 50, 54 (2d Cir. 1998) (citations omitted). See Weber v. Parfums Givenchy, Inc., 49 F. Supp. 2d 343, 354 (S.D.N.Y. 1999) (Wood, J.).

Although the central role of intent requires that caution be exercised in addressing a summary judgment motion made in a discrimination case, "'the salutary purposes of summary judgment -- avoiding protracted, expensive and harassing trials -- apply no less to discrimination cases than to . . . other areas of litigation.'" Abdu-Brisson v. Delta Air Lines, Inc.,

239 F.3d 456, 466 (2d Cir. 2001), quoting Meiri v. Dacon, supra, 759 F.2d at 998.  Thus, the Court of Appeals for the Second Circuit has expressly "remind[ed the] district courts that the 'impression that summary judgment is unavailable to defendants in discrimination cases is unsupportable.'"  Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000), quoting McLee v. Chrysler Corp., 38 F.3d 67, 68 (2d Cir. 1994).

Finally, even when a summary judgment motion is unopposed, the Court must examine the record to determine whether a genuine issue of fact exists for trial; a summary judgment motion cannot be granted on default.  Vt. Teddy Bear Co. v. 1-800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004).

    B.  The McDonnell Douglas Analysis

Plaintiff's claims of age and race discrimination are properly analyzed under the now familiar framework first set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973).  St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 510 (1993) (race-based discrimination); D'Cunha v. Genovese/Eckerd Corp., 479 F.3d 193, 194-95 (2d Cir. 2007) (age discrimination claim); Galabya v. New York City Bd. of Ed., 202 F.3d 636, 639 (2d Cir. 2000) (age discrimination claim); see Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 142 (2000) (Court assumed McDonnell Douglas is applicable to age-discrimination claims).

"Following the Supreme Court's directive, plaintiff must initially come forward with facts sufficient to establish a prima facie case that [she suffered an adverse employment action] under circumstances giving rise to an inference of discrimination." Greenway v. Buffalo Hilton Hotel, 143 F.3d 47, 52 (2d Cir. 1998). "The burden of establishing a prima facie case is not a heavy one. One might characterize it as minimal." Carlton v. Mystic Transp. Inc., supra, 202 F.3d at 134; see Galabya v. New York City Bd. of Ed., supra, 202 F.3d at 639; Scaria v. Rubin, 117 F.3d 652, 654 (2d Cir. 1997) (per curiam); Chambers v. TRM Copy Ctrs. Corp., 43 F.3d 29, 37 (2d Cir. 1994) (describing the burden of production as de minimis).

If a plaintiff succeeds in establishing a prima facie case of discrimination, a presumption is created "that the employer discriminated against the employee in an unlawful manner," Greenway v. Buffalo Hilton Hotel, supra, 143 F.3d at 52, and the burden then shifts to the employer to rebut the presumption by articulating a legitimate, non-discriminatory reason for its actions. Carlton v. Mystic Transp., Inc., supra, 202 F.3d at 134; Gallo v. Prudential Residential Servs. Ltd. P'ship, supra, 22 F.3d at 1224; Bickerstaff v. Vassar Coll., 196 F.3d 435, 446 (2d Cir. 1999).

> The defendant's burden of production also is not a demanding one; [it] need only offer such an explanation for the employment decision. Although the burden of

12

>  production shifts to the defendant, the ultimate burden of persuasion remains always with the plaintiff.

Bickerstaff v. Vassar Coll., supra, 196 F.3d at 446 (citations omitted).

If the employer articulates a non-discriminatory reason for the termination, the presumption of discrimination raised by the prima facie case "simply drops out of the picture." St. Mary's Honor Ctr. v. Hicks, supra, 509 U.S. at 510-11. See Carlton v. Mystic Transp., Inc., supra, 202 F.3d at 134-35. At this point, the burden shifts back to the plaintiff to offer proof that would allow a rational fact finder to conclude that the employer's proffered reason for the termination was pretextual. St. Mary's Honor Ctr. v. Hicks, supra, 509 U.S. at 507-08; Carlton v. Mystic Transp., Inc., supra, 202 F.3d at 135. Although the presumption of discrimination "drops out of the picture" once the defendant meets its burden of production, "the trier of fact may still consider the evidence establishing the plaintiff's prima facie case and inferences properly drawn therefrom . . . on the issue of whether the defendant's explanation is pretextual . . . ." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 142 (2000) (internal quotation marks omitted). "[A] plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the

13

employer unlawfully discriminated."  Reeves v. Sanderson Plumbing Prods., Inc., supra, 530 U.S. at 148.

In Schnabel v. Abramson, 232 F.3d 83, 90 (2d Cir. 2000), the Court of Appeals for the Second Circuit explained the impact of the Supreme Court's decision in Reeves as follows:

> In examining the impact of Reeves on our precedents, we conclude that Reeves prevents courts from imposing a per se rule requiring in all instances that [a claimant] offer more than a prima facie case and evidence of pretext . . . .  But the converse is not true; following Reeves, we decline to hold that no [] defendant may succeed on a summary judgment motion so long as the plaintiff has established a prima facie case and presented evidence of pretext.  Rather, we hold that the Supreme Court's decision in Reeves clearly mandates a case-by-case approach, with a court examining the entire record to determine whether the plaintiff could satisfy his "ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff." Reeves, 530 U.S. at ---, 120 S.Ct. at 2106 (internal quotation marks omitted).

See also Hill v. Citibank Corp., 312 F. Supp. 2d 464, 478 (S.D.N.Y. 2004) (Koeltl, J.).

Furthermore, in James v. N.Y. Racing Ass'n, 233 F.3d 149, 155 (2d Cir. 2000), the Court of Appeals for the Second Circuit explained that proof that the employer's non-discriminatory explanation is false does not inevitably establish illegal discrimination:

> We reasoned in Fisher that "evidence constituting a prima facie case prior to the employer's proffer of a reason, coupled with the error or falsity of the employer's proffered reason may -- or may not -- be sufficient to show illegal discrimination." Fisher, 114 F.3d at 1333.  In nearly identical terms the Supreme Court explained in Reeves that in some circum-

> stances, a prima facie case plus falsity of the employer's explanation can, without more, be enough to support a reasonable finding that prohibited discrimination has occurred . . . .

In order to meet his burden with respect to a <u>prima facie</u> case of discrimination, plaintiff must offer evidence sufficient to give rise to an issue of fact as to four elements: (1) he is a member of a protected class (2) he was qualified for the position; (3) he was subject to an adverse employment action and (4) the adverse employment action occurred in circumstances giving rise to an inference of discrimination on the basis of his membership in that class.  <u>Dawson v. Bumble & Bumble</u>, 398 F.3d 211, 216 (2d Cir. 2005); <u>Collins v. New York City Transit Auth.</u>, 305 F.3d 113, 118 (2d Cir. 2002); <u>Brennan v. Metro. Opera Ass'n Inc.</u>, 192 F.3d 310, 316 (2d Cir. 1999); <u>Norville v. Staten Island Univ. Hosp.</u>, 196 F.3d 89, 95 (2d Cir. 1999); <u>Hills v. City of New York</u>, 03 Civ. 4265 (WHP), 2005 WL 591130 at *3 (S.D.N.Y. Mar. 15, 2005) (Pauley, J.); <u>Beckmann v. Darden</u>, 351 F. Supp. 2d 139, 146 (S.D.N.Y. 2004) (Robinson, J.); <u>Williams v. Salvation Army</u>, 108 F. Supp.2d 303, 308 (S.D.N.Y. 2000) (Berman, J.), <u>citing</u> <u>Texas Dep't of Cmty. Affairs v. Burdine</u>, 450 U.S. 248, 254 (1981).

    C.  Application of the Foregoing <u>Principles to this Case</u>

In this case, plaintiff's prima facie case is deficient in several respects.  With respect to his reassignment from the

position of Machine Operator/Forklift Driver to Laborer (Picker/Sorter), there is uncontroverted evidence in the record that plaintiff's wages were not diminished as a result of this transfer. Thus, it is doubtful that this reassignment even constitutes an adverse employment action. See generally Morris v. Lindau, 196 F.3d 102, 110 (2d Cir. 1999) (adverse employment actions typically involve "discharge, refusal to hire, refusal to promote, demotion, reduction in pay, and reprimand").

Moreover, even if I overlook the deficiency in the proof concerning plaintiff's reassignment and assume that it was an adverse employment action, plaintiff offers no evidence suggesting that either action took place under circumstances that would give rise to an inference of discrimination. I have carefully reviewed the complaint and all of plaintiff's submissions in this matter. Plaintiff nowhere offers evidence of, or even alleges, comments suggesting age- or race-related bias, nor he does he allege that he was replaced by a younger individual who was not African-American. Moreover, in his deposition testimony, plaintiff admitted that age was not a factor in the decision to fire him, could not unambiguously testify that race played a factor in the decision to terminate his employment and could not provide any facts that would support an inference that race played a role in the decision to terminate his employment. There is simply no evidence whatsoever that age or race played

any role in the decision to transfer plaintiff and the subsequent decision to terminate his employment.

Finally, even if I make the unwarranted assumption that plaintiff has satisfied his burden with respect to a <u>prima facie</u> case and analyze the case at the third step of the <u>McDonnell Douglas</u> analysis, plaintiff has offered no evidence to rebut the non-discriminatory reason defendant has offered for its employment decisions -- poor performance.  Defendant has offered credible, unrebutted evidence that plaintiff was transferred, and later fired, due to an inability to perform the essential functions of his job.  Plaintiff offers no evidence to even create a genuine issue of fact with respect to this issue despite having been given two opportunities to do so.  Given the failure of plaintiff to offer any evidence of age- or race- based animus on the part of defendant, I conclude that there is no genuine issue of fact concerning the reasons for plaintiff's transfer and the termination of his employment, that age and race played no role in those decisions and that summary judgment dismissing the complaint is, therefore, appropriate.

IV. <u>Conclusion</u>

Accordingly, for all the foregoing reasons, defendant's motion for summary judgment dismissing the complaint is granted in all respects.

Dated: New York, New York
       September 29, 2009

SO ORDERED

_____
HENRY PITMAN
United States Magistrate Judge

Copies mailed to:

Mr. Willie Jordan
Apt 5-A
584 Union Avenue
Bronx, New York  10455

Alexander E. Gallin, Esq.
Cindy M. Schmitt, Esq.
Reed Smith LLP
599 Lexington Avenue
New York, New York  10022-7650